Rebecca S. BASHAW and Francis
J. Bashaw, Jr., Plaintiffs,

v.

BELZ HOTEL MANAGEMENT CO.,
INC., a Tennessee corporation, and Orlando Central Park, Inc., a Delaware
corporation, Defendants.

Civ. A. No. 3:94–0639.

United States District Court,
S.D. West Virginia,
Huntington Division.

Jan. 10, 1995.

John J. Polak, Robert D. Cline, Jr., and
Joseph K. Reeder, King, Allen & Arnold,
Charleston, WV, for plaintiffs.

Martin R. Smith, Jr. and Denese Venza,
Steptoe & Johnson, Charleston, WV, for defendants.

*MEMORANDUM OPINION AND ORDER*

HADEN, Chief Judge.

Pending are the Defendants' motion to dismiss and motion to transfer venue. For reasons that follow, the Defendants' motion to dismiss based on lack of personal jurisdiction is **DENIED** but their motion to transfer venue is **GRANTED.**

I

This Court has previously stated the standard used to evaluate contested personal jurisdiction is:

When a court's personal jurisdiction is contested by a Rule 12(b)(2) motion, the jurisdictional question raised is one for the court, and the plaintiff bears the burden of ultimately proving by a preponderance of the evidence the existence of a ground for jurisdiction. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989). But where, as here, the court addresses the challenge only on the motion papers, supporting legal memoranda, affidavits, other documents, and the relevant allegations of the complaint, the burden on the plaintiff is to make a mere *prima facie* showing of jurisdiction to survive the jurisdictional challenge. *Id.; Ryobi America Corp. v. Peters,* 815 F.Supp. 172, 175 (D.S.C.1993); *Verosol B.V. v. Hunter Douglas, Inc.,* 806 F.Supp. 582, 588 (E.D.Va.1992).

The burden plaintiff bears to establish the court's jurisdiction normally is not a heavy one, particularly where the court chooses to rule on the issue without an evidentiary hearing. 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1351 (1990). Mere allegations of personal jurisdiction are sufficient for a party to make a *prima facie* showing. *Dowless v. Warren–Rupp Houdailles, Inc.,* 800 F.2d 1305, 1307 (4th Cir. 1986). When considering a challenge to its personal jurisdiction on the parties' filings, the court must resolve factual conflicts in favor of the party asserting jurisdiction for the purpose of determining whether he or she has made the requisite *prima facie* showing. *Bakker,* 886 F.2d at 676; *Eastern Marketing Corp. v. Texas Meridian Prod. Co., Inc.,* 798 F.Supp. 363, 364 (S.D.W.Va.1992) (Haden, C.J.). The Court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Bakker,* 886 F.2d at 676.

*Clark v. Milam (Clark II),* 830 F.Supp. 316, 318–319 (S.D.W.Va.1993) (Haden, C.J.) (emphasis in original). *See Clark v. Milam (Clark IV),* 847 F.Supp. 409, 412 (S.D.W.Va. 1994) (Haden, C.J.); *Alpha Welding & Fabricating v. Todd Heller, Inc.,* 837 F.Supp. 172, 174 (S.D.W.Va.1993) (Haden, C.J.).

II

The material facts are undisputed. The Defendants own and operate a resort and conference center in Orlando, Florida, known as The Peabody Hotel, Orlando ("The Peabody"). The Peabody caters to large organizations and actively solicits reservations made by such groups. Advertisements for The Peabody appear in two national trade publications, *Successful Meetings* and *Meetings Planners,* targeted to corporate meeting planners. Listings for The Peabody also have appeared in services and publications aimed at travel agents such as *Hotel and Travel Index, Official Hotel Guide,* and *Official Airlines Guides Business Travel Planner.* The Peabody also operates a 1–800 telephone line. The Peabody has not conducted any business with any West Virginia organizations, nor contracted with an organization through a West Virginia travel agent.

Neither the Defendants nor The Peabody owns property in West Virginia, nor are they registered to do business in West Virginia. Neither Defendant has conducted any independent business within West Virginia.

During the fall of 1991, Walt Wilson, the Unit Chief for the Federal Bureau of Investigations ("FBI") in Washington, D.C., began arrangements for a retirement planning seminar for retiring FBI personnel to be held at The Peabody. Mr. Wilson had held the FBI's retirement seminar at The Peabody for the previous three years. Mr. Wilson coordinated the seminar and registered all interested FBI personnel including the Plaintiffs. Although Mr. Wilson coordinated ac-

commodations and room assignments, Mr. Bashaw called The Peabody prior to the seminar to confirm his reservation. This was the sole contact between The Peabody and the Plaintiffs.

While the Plaintiffs were attending the seminar at The Peabody, Mrs. Bashaw injured her right leg and knee when she slipped and fell as she was getting out of the shower. She was taken by local paramedics to the Orlando Regional Medical Center where she underwent surgery and received follow-up medical treatment. Subsequently, Mrs. Bashaw has been treated by physicians at the Duke University Medical Center in Durham, North Carolina.

The Plaintiffs filed suit in the Circuit Court of Kanawha County, West Virginia, alleging the Defendants were negligent in their maintenance of the premises. The Defendants removed the case to this Court and subsequently filed the pending motion to dismiss and motion to transfer venue.

### III

In response to the motion to dismiss, the Plaintiffs have asserted personal jurisdiction based on specific contacts of the Defendants to West Virginia through this litigation and the stream of commerce theory.

■ Traditionally, a two-step analysis has been used to resolve personal jurisdiction disputes. First, a court determines whether the state's long-arm statute is applicable. Second, a court determines whether the statute's application will violate the due process clause of the United States Constitution. *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir.1993); *Clark v. Milam (Clark II)*, 830 F.Supp. 316, 319 (S.D.W.Va.1993); *Chedid v. Boardwalk Regency Corp.*, 756 F.Supp. 941, 942 (E.D.Va.1991). However, in cases where the state's long-arm statute extends to the limits of due process, the analysis collapses to the second step only and "the Court proceeds directly to determine whether it is constitutionally permissible to require Defendants to defend this suit in this Court." *Clark II*, 830 F.Supp. at 319 n. 3. *See Federal Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654, 657 n. 2 (4th Cir.1989). West Virginia's long-

arm statute, W.Va.Code § 56–3–33, is "coextensive with due process." *Clark II*, 830 F.Supp. at 319 n. 3 (citing *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 525 (4th Cir.1987)). *See Faulkner v. Carowinds Amusement Park*, 867 F.Supp. 419, 422–23 (S.D.W.Va.1994); *Harman v. Pauley*, 522 F.Supp. 1130, 1135 (S.D.W.Va. 1981). Accordingly, this Court will only pursue the second step in the analysis: whether the statute's application will violate the due process clause.

Our Court of Appeals has spoken recently on the constitutional exercise of personal jurisdiction in the context of a stream of commerce analysis. In *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939 (4th Cir.1994), *petition for cert. filed*, 63 U.S.L.W. 3488 (U.S. Dec. 19, 1994) (No. 94–1085), the Court noted

> [w]hile [*World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)] has been cited for the proposition that personal jurisdiction may follow a product if it is delivered "into the stream of commerce with the expectation that [it] will be purchased by consumers in the forum state" ... we read the holding of the case to be much narrower, requiring purposeful activity on the part of the defendants to establish a meaningful contact with the forum state.

*Lesnick*, 35 F.3d at 944 (case cites omitted). This panel reiterated the Court's earlier holding in *Federal Ins. Co. v. Lake Shore, Inc.*, 886 F.2d at 658, that a " 'stream of commerce' theory of personal jurisdiction ... cannot supplant the requirement that a defendant in some way purposefully avail itself of forum law."

Firmly observing the necessity of purposeful availment and fundamental fairness, the Court further explicated a general test for the constitutional application of personal jurisdiction, explaining at length:

> Our reading of *World–Wide Volkswagen* and *Asahi* [*Metal Industry Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)] is that the Supreme Court has not abandoned the *International Shoe* [*Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)] two-pronged test as further articulated in *Han-*

son [*v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)] and *Burger King* [*Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)]. The touchstone of the minimum contacts analysis remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state. *See Hanson,* 357 U.S. at 253, 78 S.Ct. at 1239; *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183; *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567. And if that initial test is met, a court must still determine whether the exercise of such jurisdiction would offend traditional notions of fair play and substantial justice. *See Asahi,* 480 U.S. at 113, 107 S.Ct. at 1032–33. This reading of *World–Wide Volkswagen* and *Asahi* has prior support in our jurisprudence. *See Ellicott Mach. Corp. v. John Holland Party, Ltd.,* 995 F.2d 474, 477 (4th Cir.1993) (holding that minimum contacts exist where the defendant "purposefully directs its activities toward the residents of the forum"); *See also Federal Insurance Co. v. Lake Shore, Inc.,* 886 F.2d 654 (4th Cir.1989). To permit a state to assert jurisdiction over any person in the country whose product is sold in the state simply because a person must expect that to happen destroys the notion of individual sovereignties inherent in our system of federalism. Such a rule would subject defendants to judgment in locations based on the activity of third persons and not the deliberate conduct of the defendant, making it impossible for defendants to plan and structure their business contacts and risks. Moreover, we do not believe that the holding of *World–Wide Volkswagen* takes us as far as plaintiff in this case suggests. Thus, we hold that the test to be applied in considering the reach of personal jurisdiction inquires whether (1) the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state; and (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice, taking into account

such factors as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies. *See Hanson,* 357 U.S. at 253, 78 S.Ct. at 1239; *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183; *Asahi,* 480 U.S. at 113, 107 S.Ct. at 1033.

*Lesnick v. Hollingsworth & Vose Co.,* 35 F.3d 939, 945–946 (4th Cir.1994) (footnote omitted). *See Faulkner v. Carowinds Amusement Park,* 867 F.Supp. 419, 424 (S.D.W.Va. 1994). Accordingly, as in *Lesnick,* the Plaintiffs here "cannot rely simply upon the 'stream of commerce' logic to establish jurisdiction." *Lesnick,* 35 F.3d at 946. Instead, the exercise of personal jurisdiction must satisfy the test enunciated in *Lesnick.*

■ Applying the first factor: a substantial connection with the forum state established by purposefully directed action toward the forum state, it is apparent the Defendants do not have sufficient minimum contacts with West Virginia for this Court to exercise personal jurisdiction. The Defendants lack such substantial and purposefully directed contacts with West Virginia to support the exercise of either general or specific personal jurisdiction.

■ When a court applies general personal jurisdiction over a suit it "exercises jurisdiction over a suit that does not arise out of the defendant's activities in the forum state." *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1199 n. 2 (4th Cir.1993). Exercising general jurisdiction requires the requisite minimum contacts between the defendant corporation and the forum state to be fairly extensive. *Nichols,* 991 F.2d at 1199.

"Conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to [general jurisdiction]." *International Shoe,* 326 U.S. at 317, 66 S.Ct. at 159. Even "continuous activity of some sorts [by a corporation] within a state is not enough to support [general jurisdiction over the corporation]." *Id.* at 318, 66 S.Ct.

at 159. Only when the "continuous corporate operation within a state [is] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities" may a court assert general jurisdiction over a corporate defendant. *Id.*

*Nichols,* 991 F.2d at 1199. "[T]he defendant's contacts with the forum must be continuous and systematic in order to satisfy the due process clause." *Federal Ins. Co. v. Lake Shore, Inc.,* 886 F.2d 654, 660 (4th Cir.1989) (quotation omitted).

General jurisdiction may not be applied to the Defendants here because they have no continuous and systematic general contacts with West Virginia. They own no property in West Virginia nor do they do any business here. Our Court of Appeals has clearly indicated that advertising and solicitation alone do not establish sufficient minimum contacts with a forum state. *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1200 (4th Cir.1993); *Federal Ins. Co. v. Lake Shore, Inc.,* 886 F.2d 654, 659 (4th Cir.1989) (a listing in a nationally distributed trade journal, standing alone, does not confer personal jurisdiction). *See also Faulkner,* 867 F.Supp. at 424; *Chedid v. Boardwalk Regency Corp.,* 756 F.Supp. 941 (E.D.Va.1991). Neither defendant nor The Peabody has established any presence in the state sufficient for the exercise of general jurisdiction.

■ A court exercises specific jurisdiction when it exercises jurisdiction over a suit that arises out of the defendant's activities in the forum state. *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1199 n. 2 (4th Cir.1993). Our Court of Appeals has stated

[s]pecific jurisdiction involves the exercise of personal jurisdiction over the defendant in an action which arises out of the defendant's contact with the forum. *See Helicopteros [Nacionales de Colombia v. Hall],* 466 U.S. [408] at 414 n. 8, 104 S.Ct. [1868]

at 1872 n. 8 [80 L.Ed.2d 404 (1984)]. Where a court seeks to assert specific jurisdiction over a nonresident corporate defendant, the "fair warning" requirement inherent in due process still demands that the defendant "purposefully directed" its activities at the forum. *Keeton [v. Hustler Magazine, Inc.],* 465 U.S. [770] at 774, 104 S.Ct. [1473] at 1478 [79 L.Ed.2d 790 (1984)].

*Federal Ins. Co. v. Lake Shore, Inc.,* 886 F.2d 654, 660 (4th Cir.1989). Physical presence in the forum state is unnecessary for the exercise of personal jurisdiction if a commercial actor's efforts are purposefully directed toward residents of another State. *Clark v. Milam (Clark IV),* 847 F.Supp. 409, 414 (S.D.W.Va.1994) (Haden, C.J.) (quoting *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184, 85 L.Ed.2d at 543).

■ This Court cannot exercise specific jurisdiction over the Defendants because none of the Defendants' alleged actions from which the suit arose occurred in West Virginia. All of the Defendants actions occurred in Florida. The single phone call the Plaintiffs made to The Peabody to confirm their reservations is not sufficient to acquire specific jurisdiction. Answering such a call cannot be characterized as activity purposefully directed toward West Virginia, nor can it be characterized as an activity giving the Defendants fair warning of the possibility of suit in West Virginia. The "unilateral activity of another party or third person cannot satisfy the minimum contacts requirement of due process." *Federal Ins. Co. v. Lake Shore, Inc.,* 886 F.2d 654, 659 (4th Cir.1989) (quotation omitted).

Because the exercise of personal jurisdiction over the Defendants fails the first part of the *Lesnick* test, it is unnecessary to proceed to the second part of the test. *Faulkner,* 867 F.Supp. at 419. This Court cannot exercise personal jurisdiction over the Defendants, but another federal court may.[1]

---

1. A similar case from the Western District of Virginia, *Carter v. Trafalgar Tours Ltd.,* 704 F.Supp. 673 (W.D.Va.1989), can be distinguished from the case at hand. In *Trafalgar,* the district court found the "[e]xercise of jurisdiction over defendant comports with due process because

defendant's *contract* with the plaintiff had substantial connection with Virginia." *Id.* at 677 (quotation omitted) (emphasis added). In *Trafalgar* the Defendant entered into a contract with a resident of Virginia to provide services to the Plaintiffs, residents of Virginia, who later sued in

## IV

Alternatively, the Defendants moved to transfer this case to the Southern District of Florida. As the Plaintiffs noted in response, The Peabody Hotel, Orlando, is located in the Middle District of Florida. The Defendants acknowledged the misnomer in their reply and conceded they intended to seek transfer to the Middle District. Accordingly, this Court treats the Defendants motion as a motion to transfer venue to the United States District Court for the Middle District of Florida.

■ Although this Court lacks personal jurisdiction over the Defendants, the absence of such jurisdiction does not compel outright dismissal. *Chedid v. Boardwalk Regency Corp.*, 756 F.Supp. 941, 942 (E.D.Va.1991). Under 28 U.S.C. § 1406(a), the district court "of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Our Court of Appeals has adopted a broad reading of § 1406(a) that "authorizes the transfer of a case to any district, which would have had venue if the case were originally brought there, for *any reason* which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district." *Porter v. Groat*, 840 F.2d 255, 258 (4th Cir.1988) (emphasis added).

Venue is improper in this Court because it lacks personal jurisdiction. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(a)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" within the District at The Peabody. Because the Court perceives it to be in the interest of justice for Plaintiffs

to have their day in court, but in Florida, and because no countervailing reasons to deny transfer exist, the Defendants motion to transfer to the Middle District of Florida will be granted. *Porter v. Groat*, 840 F.2d at 258 (4th Cir.1988).

## V

The Court **DENIES** the Defendants' motion to dismiss and **GRANTS** the motion to transfer venue to the Middle District of Florida. Accordingly, the Court **ORDERS** the case be transferred to the United States District Court for the Middle District of Florida.

---

Virginia. Here, the Defendants did not enter any contract with a West Virginia resident to provide their services, instead, the Defendants contracted with the FBI in the District of Columbia. Accordingly, the Defendants' contract has a connection to the District of Columbia rather than West Virginia.

The stream of commerce analysis the Supreme Court of Appeals of West Virginia applied to a travel dispute in *Marion v. Sabra Tours Intern., Inc.*, 190 W.Va. 250, 438 S.E.2d 42 (1993), can be distinguished on similar grounds. In *Marion,*

the West Virginia Plaintiffs contracted with a local travel agency which, in turn, contracted with the foreign Defendants. *See Federal Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654, 659 (4th Cir. 1989) ("This case is distinguishable from those 'stream of commerce' cases where a manufacturer employs an intermediary or distributor in the forum state and thereby benefits legally from the protection provided by the laws of the forum and economically from indirect sales to forum residents.").