**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 06-2233**

———————

BAY COUNTRY CONSUMER FINANCE, INCORPORATED,

                                    Plaintiff - Appellant,

        versus

FIDELITY SECURITY LIFE INSURANCE COMPANY,

                                    Defendant - Appellee.

--------------------

OPTIMUM RE INSURANCE COMPANY,

                                    Party in Interest.

--------------------

BEL AIR AUTO AUCTION, INCORPORATED; BSC
AMERICA, INCORPORATED; STEVEN R. FREEMAN,

                                    Movants.

———————

Appeal from the United States District Court for the District of
Maryland, at Baltimore.    Catherine C. Blake, District Judge.
(1:04-cv-00253-CCB)

———————

Argued:  December 6, 2007          Decided:  January 18, 2008

———————

Before WILKINSON and SHEDD, Circuit Judges, and James P. JONES,
Chief United States District Judge for the Western District of
Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Steven Richard Freeman, FREEMAN, WOLFE & GREENBAUM, P.A., Towson, Maryland, for Appellant.  Barron L. Stroud, Jr., BROWN & SHEEHAN, L.L.P., Baltimore, Maryland, for Appellee.  **ON BRIEF:** Robert C. Sanders, Upper Marlboro, Maryland, for Appellant.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Lee Parsons was insured by two life insurance policies issued by appellee Fidelity Security Insurance Company ("Fidelity"). The policies were assigned by Parsons to appellant Bay Country Consumer Finance, Incorporated ("Bay Country"), as collateral for loans made to Parsons. On June 11, 2003, Parsons, after having been missing for six days, was found dead from carbon monoxide poisoning in his car in the garage of a friend for whom he had been house-sitting.

An autopsy was performed by the office of the Maryland Chief Medical Examiner and on June 30, 2003, Ana Rubio, M.D., an assistant medical examiner, issued a report that opined that the manner of death was suicide. However, after being provided additional information on the circumstances of Parsons' death by Bay Country's attorney, Dr. Rubio changed her opinion as to the manner of death from "suicide" to "accident."

Because the life insurance policies in question contained an exclusion for suicide, Fidelity declined to pay, and Bay Country filed the present lawsuit in state court, which Fidelity removed to the district court. At the trial below, the issue was whether Parsons had in fact committed suicide, with the parties presenting conflicting evidence and expert opinion. The jury returned a verdict in favor of Fidelity and Bay Country noted this appeal, contending that the trial judge committed reversible error in certain evidentiary rulings. We affirm.

We review the district court's evidentiary rulings for abuse of discretion.  United States v. Hedgepeth, 418 F.3d 411, 419 (4th Cir. 2005).  A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law. Id.; United States v. Williams, 461 F.3d 441, 445 (4th Cir. 2006).

In a pretrial written opinion on Fidelity's motion in limine, the district judge excluded evidence from Dr. Rubio, the medical examiner, as to the manner of death.  This exclusion was based on several grounds, including the fact that the revised opinion was the result of "selective information brought to [Dr. Rubio's] attention by an advocate for one side" and thus would "inject the issue of [the attorney's] personal communication with the medical examiner into the jury's deliberations."  (J.A. 534.)  After this ruling, a copy of Dr. Rubio's autopsy report was introduced into evidence, but with the manner of death opinion redacted.

We believe that the district court did not commit error in finding that the probative value of Dr. Rubio's opinion was outweighed by its possible confusion of the issues.  See Fed. R. Evid. 403.  Along with its motion in limine, Fidelity also moved to disqualify counsel for Bay Country, and while the district court expressly disclaimed any suggestion of improper behavior by the

4

attorney, it was understandably concerned that these circumstances would distract the jury from the real questions in the case.

Moreover, even if the district court's evidentiary ruling was error, it was harmless. See United States v. Morison, 844 F.2d 1057, 1078-80 (4th Cir. 1988) (concluding that the district court did not commit reversible error when it excluded a portion of a defense expert's testimony because, inter alia, three other experts testified to the same issue). Bay Country introduced the testimony of two other experts, Dr. Caplan, a forensic toxicologist, and Dr. Adams, a forensic pathologist, supporting the manner of death as accidental. Dr. Rubio's opinion was simply cumulative. While Bay Country argues that the opinion of a public official such as Dr. Rubio would have been more persuasive to the jury because of its perceived neutrality, that contention is undercut by the involvement of counsel in changing Dr. Rubio's mind as to the manner of death.

II.

Bay Country also contends that the district court erred during trial in sustaining an objection to a hypothetical question posed on cross examination to one of Fidelity's expert witnesses, Dr. Breitenecker. In his discovery deposition, Dr. Breitenecker had been critical of the medical examiner's change in opinion as to the manner of Parsons' death, and stated that had he been the medical

5

examiner under the circumstances, he might have changed his opinion from "suicide" to "undetermined," but not to "accident." (J.A. 38.) Before the jury, counsel for Bay Country sought to elicit the same answer from Dr. Breitenecker. The trial judge sustained Fidelity's objection on the ground that such testimony would open up the issue of the medical examiner's opinion as to the manner of death, an issue foreclosed by the court's earlier ruling.

We agree with the district court that Dr. Breitenecker's answer would have either led to the medical examiner's actual opinion in the case, an option at odds with the exclusion of that opinion, or would have been unfair to the full context of the witness's answer as given in the deposition. Because the trial court's ruling excluding the medical examiner's opinion is unassailable, this evidentiary ruling is likewise not a ground for reversal.

## III.

For the foregoing reasons, and after careful consideration of the record and the appellant's contentions, the judgment below is

AFFIRMED.

6